CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG 16 2006
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BRYCE DOWNIE,<br><br>Plaintiff,<br><br>v.<br><br>REVCO DISCOUNT DRUG CENTERS, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:05-CV-00021<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

By order of this Court, this case was referred to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate filed his Report on June 19, 2006, recommending that this Court grant the defendant's motion to strike the evidence of James L. Wilt, deny as moot the motion to strike the evidence of Liza L. Gold, M.D., grant the defendant's motion for summary judgment on all counts, and dismiss this case from the docket. Plaintiff filed objections to this report on July 7, 2006. Said objections having been timely and appropriately lodged, this Court must undertake a *de novo* review with respect to those portions of the Report to which objections were made. 28 U.S.C.A. § 636(b)(1); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982). After a thorough examination of the objections, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation, this Court shall overrule all objections, adopt in part the Report and Recommendation, and order that summary judgment be granted for Defendant on all counts.

1

Plaintiff Bryce Downie ("Downie") filed suit against Defendant Revco Discount Drug Centers, Inc. ("Revco" or "CVS") and ChoicePoint Services, Inc. ("ChoicePoint"),[1] alleging violations of the Americans with Disabilities Act ("ADA") through wrongful termination and breach of confidentiality by Revco, violation of the Fair Credit Reporting Act ("FCRA") by both defendants, and violation of the Virginians with Disabilities Act ("VDA") by Revco. These claims arise from Revco's firing of Downie, who worked as a pharmacy technician for the defendant. Downie is a diagnosed epileptic, and the evidence before the Court indicates that the medications he took to control his condition affected his memory and thinking. When purchasing medication at the CVS where he worked, the clerk checked him out for only one prescription, although the bag in which the pharmacy placed the medication contained three of his prescriptions. When the lead pharmacy technician discovered the error she spoke to Plaintiff, and believing that he had paid for all three prescriptions, he asked for time to check his records for a receipt. After several weeks delay, Plaintiff acknowledged in a written statement that he had not paid for the other two prescriptions, and Revco terminated him for removing items from the store without paying for them. After Plaintiff's termination, Revco provided a statement to ChoicePoint, a credit reporting agency, saying that Plaintiff had been terminated for theft of drugs. At least in part because of this information, another company later declined to hire Plaintiff.

Plaintiff objects to the Report on several grounds: (1) the Magistrate Judge failed to acknowledge that Defendant's inquiry into Plaintiff's medical condition and the resulting breach of confidentiality were part of the EEOC's investigation and thus that the Court is not barred

---

[1]ChoicePoint was dismissed from the suit on December 16, 2005.

2

from considering this claim; (2) the Magistrate Judge erred in treating exhaustion of remedies as a jurisdictional requirement; (3) the Magistrate Judge erred in assessing whether Plaintiff was a qualified individual with a disability for ADA purposes; (4) the Magistrate Judge ignored evidence and applied an incorrect standard in determining whether to allow James L. Wilt to testify as an expert; (5) the Magistrate Judge failed to acknowledge questions of fact in the record that made summary judgment inappropriate; and (6) the Magistrate erred in finding that Plaintiff had not produced evidence of discrimination. Plaintiff seeks a hearing on these objections. After reviewing the record and the parties' briefs, the Court determines that no hearing is necessary and that the issues may be determined on the pleadings. The Court will address each of Plaintiff's objections in turn.

I

Plaintiff first argues that the Magistrate Judge should have acknowledged that Revco's inquiry into Plaintiff's medical condition, and thus its breach of the ADA confidentiality provisions, were part of the EEOC's investigation. Plaintiff argues because Defendant made his condition part of the EEOC investigative record, the breach of confidentiality claim is not barred by a failure to exhaust administrative remedies.

The ADA prohibits employers from making inquiries of an employee as to whether he is an individual with a disability or as to the nature or severity of the disability, except in certain circumstances. 42 U.S.C. § 12112(d)(4); *Porter v. United States Alumoweld Co.*, 125 F.3d 243, 246 (4th Cir. 1997). Before a plaintiff can bring an ADA lawsuit, however, he must file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"). Only those discrimination claims stated in the initial charge, those reasonably related to the original

3

complaint, and those developed by reasonable investigation of the original complaint may be maintained in a later suit. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (discussing Title VII).[2] Although the initial charge itself does not strictly limit a Title VII suit, the suit is confined by the scope of administrative investigation that can reasonably be expected to follow from the charge. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *see also Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) ("The EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals") (citation omitted).

Here, Downie argues that Revco submitted to the EEOC the handwritten statement that was the source of his breach of confidentiality claim. The mere fact that this document was in the EEOC file, however, does not indicate that an investigation of a potential breach of confidentiality would reasonably be expected to follow. Plaintiff's EEOC charge and Defendant's response both focus on the discrimination claim, and the handwritten statement is certainly relevant to that claim. Without some further indication from Plaintiff that the statement might give rise to a breach of confidentiality claim, investigation of that claim cannot be said to reasonably result merely from the statement's presence in the file. Similarly, the fact that Downie alleged that he had been damaged because his credit report states he was terminated for stealing drugs would not necessarily lead the EEOC to pursue a separate claim for breach of confidentiality. Hence, Downie's argument on this point fails.

## II

---

[2] The enforcement provisions of the ADA are essentially identical to those of Title VII. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002).

Case 3:05-cv-00021-NKM-BWC   Document 131   Filed 08/16/06   Page 4 of 12   Pageid#: 2032

Plaintiff also argues that the Magistrate Judge erred in treating the exhaustion of administrative remedies as a jurisdictional requirement. In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982), the Supreme Court held that the requirement of timely filing of an EEOC charge of discrimination is not jurisdictional but is subject to equitable tolling and waiver.[3] This does not mean that the requirement of timely filing must never be satisfied; it merely means that it may be waived or tolled. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984). In this case, the Court agrees with Defendant that neither tolling nor waiver is applicable. In the first place, there is nothing to toll because Plaintiff has never filed a charge of discrimination with the EEOC regarding breach of confidentiality. Nor has Defendant waived this argument. Hence, even if it is not jurisdictional, Plaintiff's failure to file a timely charge with the EEOC on this claim bars the Court from considering it.

## III

Plaintiff next argues that the Magistrate Judge erred in his consideration of whether Plaintiff has a disability under the ADA. To survive summary judgment for an ADA discrimination claim, Plaintiff must show that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing his job at a satisfactory level; and (4) the circumstances of his discharge give rise to a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001). One is within the protected class if one is a qualified individual with a disability. *Id.*; 42 U.S.C. § 12112. A disability is a physical or mental impairment that substantially limits one or more major life

---

[3]Although *Zipes* addressed Title VII rather than the ADA, the ADA adopts the enforcement mechanisms of Title VII. *See* 42 U.S.C. § 12117.

5

activities, 24 U.S.C. § 12112(2); *Haulbrook*, 252 F.3d at 703. Major life activities are "those activities that are of central importance to daily life," and that the average person can perform with little or no difficulty. *Rohan v. Networks Presentations, L.L.C.*, 375 F.3d 266, 274 (4th Cir. 2004) (citation omitted). Whether an individual has a disability is a question a court may resolve as a matter of law. *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 254 (4th Cir. 2006).

The Magistrate Judge determined that the testimony of Plaintiff's expert Dr. Liza Gold related only to Plaintiff's damages. Plaintiff objects to the Magistrate Judge's failure to acknowledge the testimony of Dr. Gold as it relates to Plaintiff's status as an individual with a disability. Plaintiff argues that, in fact, Dr. Gold's report extensively discusses both Plaintiff's condition and the cognitive effects from his anti-seizure medication. Plaintiff also argues that the Magistrate Judge should have considered the effects of Downie's medication as well as his underlying condition in determining whether he is an individual with a disability.

As an initial matter, it is clear that in considering whether Downie was a qualified individual with a disability, the Magistrate Judge took into account not only Plaintiff's inability to drive or take a bath without supervision– the direct impairments caused by his epilepsy-- but also the impairments to his ability to think and concentrate arising from his medication. (See Report and Recommendation 24). Upon considering the question *de novo* and taking into account the effects both of Plaintiff's condition and his treatment, this Court reaches the same conclusion: Plaintiff has not produced evidence that he is an individual with a disability that would allow him to survive summary judgment.

In evaluating whether a person is disabled under the ADA, courts must consider both the positive and negative effects of any corrective measures that person has applied to his

6

impairment. *Sutton v. United Air Lines*, 527 U.S. 471, 482 (1999); *Heiko*, 434 F.3d at 257. Here, Plaintiff has presented evidence that the medication that he took to control his seizures caused him confusion and difficulty concentrating. Assuming without deciding that Dr. Gold's testimony on this point is admissible, the evidence nonetheless fails to show that Plaintiff was substantially limited in one or more major life activities. His condition as an epileptic prevented him from driving a car or taking a bath without supervision. Driving itself, however, is not a major life activity. *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329-1330 (11th Cir. 2001). Nor can the Court hold that taking a bath, as opposed to bathing, qualifies as a major life activity.

Further, the fact that Plaintiff's medication caused him confusion and lessened concentration does not render him disabled. As the Fourth Circuit noted in *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 353 (4th Cir. 2001), forgetfulness or slowed thinking equivalent to that suffered by many other adults in the general population does not rise to the level of a substantial limitation. Like the plaintiff in *Sara Lee Corp.*, here Downie was able to continue working despite the effects of his medication, and there is no evidence that his diminished concentration was significantly worse than what other, non-disabled members of society experience. Even if accepting the whole of Dr. Gold's report, the evidence merely shows that Plaintiff's medications make "it more difficult for him to concentrate and [slow] his thinking somewhat," (Pl.'s Ex. 12, Br. in Support, March 27, 2006), and that during the relevant time period, he may have been "more prone to making a cognitive error." (Pl.'s Ex. 9, Br. in Support, March 27, 2006). An inquiry into whether an individual is disabled requires an individualized determination based on the particular facts of the case. *Sara Lee Corp.*, 237 F.3d at 352. Here, even taking all the

7

evidence in the light most favorable to Plaintiff, his condition did not rise to the level of a disability under the ADA. In light of this holding, both Plaintiff's ADA discrimination and VDA claims must fail, because a plaintiff's rights under the VDA are coextensive with those under the ADA. *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 216 (4th Cir. 1994). For the sake of completeness, however, the Court will consider Plaintiff's other objections with regard to these claims.

## IV

Plaintiff argues that the Magistrate Judge erred in excluding the testimony of Plaintiff's proposed expert James Wilt, and specifically that the Magistrate Judge ignored Wilt's qualifications related to retail loss prevention and applied too stringent a test in determining that his testimony should be struck. Expert testimony is admissible if offered by a witness qualified as an expert "by knowledge, skill, experience, training, or education," and if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles or methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. In considering whether a witness is qualified as an expert, courts should take into account not only his academic or technical training, but also his relevant practical experience. *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005).

Plaintiff first argues that the Magistrate Judge ignored evidence that Wilt had more than 35 years of experience in loss prevention investigations and had worked in loss prevention for a number of retailers, including 7-11, Radio Shack, and Montgomery Ward. It is inaccurate to say that the Magistrate Judge ignored this evidence, given that it was never placed before him in a meaningful way. Plaintiff's expert disclosure states only that Wilt is "an expert in polygraph

8

examinations and loss prevention with more than 35 years of experience in the field." (Ex. 5, Def's Motion to Compel, Jan. 11, 2006). In the section of Wilt's deposition proffered to the Court, Wilt noted that he had worked for First Virginia Bank, Wells Fargo, Loomis Fargo, and Banktek West with regard to loss prevention. He also mentioned that he had worked for Southland and Radio Shack. (Ex. T, Def's Response in Support 69-71, April 20, 2006). The majority of Wilt's experience thus appeared to be in polygraph operation rather than in loss prevention investigations. Plaintiff now offers a section of Wilt's deposition providing fuller details of Wilt's work in loss prevention for Radio Shack and Montgomery Ward.

A district court may receive new evidence that was not before the Magistrate Judge when reviewing a report and recommendation. *Virgin Enters, Ltd. v. Virgin Cuts, Inc.*, 149 F. Supp. 2d 220, 223 (E.D. Va. 2000). The district court is not required to do so, however, and attempts to raise new evidence on appeal are disfavored. *See Callas v. Trane CAC, Inc.*, 776 F. Supp. 1117, 1119 (W.D. Va. 1990). Even if the Court were to accept Plaintiff's new evidence, it would not alter the outcome on this point, because Wilt remains unqualified to testify as an expert on loss prevention in pharmacies. His deposition discloses that he has not worked in loss prevention since the late nineteen-eighties, he belongs to no organizations related to loss prevention, has published no articles on it, received no certification related to it, nor been trained in it specifically. Although he appears to have practical experience in the field, the scope of that experience is unclear, as is the specific capacity in which he worked. He has never testified as an expert on loss prevention before, despite a lengthy association with Plaintiff's attorneys. Further, he has never worked in loss prevention at a pharmacy and is unfamiliar with the loss prevention practices at CVS. Finally, his information regarding this particular case is limited, in that he

9

relied on Plaintiff's attorney and Plaintiff himself to provide information on CVS' loss-prevention methodology and did not speak with anyone at CVS. Although an expert may base his opinion on the type of evidence reasonably relied on by experts in the field, here the dearth of information before Wilt on CVS' usual practices suggests he had an inadequate basis for his opinion. Hence, upon consideration of all the facts offered by Plaintiff, the Court determines that Wilt is not qualified as an expert in loss prevention by knowledge, skill, experience, training, or education. Further, his opinion is not based upon sufficient facts and data. Therefore, Defendant's motion to strike his opinion must be granted.

V

Plaintiff also argues that the Magistrate Judge failed to acknowledge conflicts in the evidence that make summary judgment inappropriate. Specifically, Plaintiff argues that it is unclear whether Defendant forwarded his signed admission statement to other corporate entities besides ChoicePoint. In support, Plaintiff cites to the 30(b)(6) deposition of defendant's representative, who stated that he could not be sure whether the admission statement was sent to Retail Enterprises. This uncertainty does not create a conflict in the evidence precluding summary judgment, however. The deponent's statements, viewed in context, indicate his relative certainty that this information was not sent. Further, Defendant submitted an affidavit from Richard Milano of Retail Enterprises that it had never received Downie's signed admission. In light of this evidence, it is clear that there is no genuine conflict in the facts and that no corporate entity other than ChoicePoint received the signed admission.

VI

Finally, Plaintiff argues that he has produced sufficient evidence that he was terminated

10

under conditions giving rise to a reasonable inference of discrimination. As noted above, the Court need not reach this issue in order to determine that Plaintiff's discrimination claim fails. Nonetheless, even if Plaintiff were disabled within the meaning of the ADA, a review of all the evidence available discloses that the circumstances of Plaintiff's termination do not give rise to an inference of discrimination. The only direct evidence of discrimination Plaintiff offers is a hearsay statement by Elizabeth Kelly that Plaintiff's former supervisor Kim Dowell spoke to her and stated that she believed his termination was disability-related. This statement would be inadmissible at trial, and hence is not properly considered on summary judgment. *See Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2721 (2d ed. 1983). Further, the circumstantial evidence that Plaintiff offers regarding Defendant's treatment of other employees simply fails to create an inference of discrimination. The reports detail incidents where employees were terminated for taking merchandise without paying for it, even where the loss to the store was minimal, and only show one instance where the cashier was terminated for failing to ring up prescriptions. Further, the defendant's evidence shows that details related to prescriptions were included in some reports.

Plaintiff also argues that there is an issue of fact regarding who actually terminated Plaintiff that precludes summary judgment. In fact, however, this question is immaterial. As numerous courts have noted, in order to create a dispute of fact sufficient to prevent summary judgment, a material fact must be at issue. Here, whether Hair or some other unspecified district manager terminated Plaintiff is not an issue of material fact.

Finally, Plaintiff argues that a jury could infer discriminatory intent from the fact that the

11

initial COBRA notice sent to Plaintiff did not contain prescription benefit coverage. The evidence reflects, however, that this was an error rather than malfeasance, and when Plaintiff's mother contacted the company they remedied the problem. These facts simply do not raise an inference of discrimination.

## VII

Having considered the parties' objections, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation, the Court determines that Plaintiffs objections to the Report should be overruled and summary judgment should be entered for Defendant on all counts.

An appropriate order shall issue this day.

ENTERED: *[signature]*
U.S. District Judge

August 14, 2006
Date

12